UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                          Case No. 14-cr-71-pp

DANIEL CONTRERAS,

    Defendant.

---

**DECISION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NO. 102) AND DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT (DKT. NO. 91)**

---

On March 18, 2014, a grand jury in the Eastern District of Wisconsin returned a sealed indictment charging defendant Daniel Contreras (among others) with one count of conspiring to distribute controlled substances involving fifty grams or more of methamphetamine and 100 grams or more of heroin, and one count of distributing fifty grams or more of methamphetamine. Dkt. No. 1. The indictment remained under seal until the court unsealed it as to the defendant on March 2, 2016. Dkt. No. 14. On February 27, 2017, the defendant moved to dismiss the indictment. Dkt. No. 91. After briefing, Magistrate Judge David E. Jones issued a report, recommending that this court deny the motion without prejudice. Dkt. No. 102. The defendant objected to that recommendation. Dkt. No. 103. The court adopts the recommendation, overrules the objection, and denies the motion without prejudice.

A.  Factual Background

The defendant's motion implicates three other indictments, all filed on January 7, 2015 in the Northern District of Illinois. See Dkt. Nos. 95-1; 95-3; 95-5.

In Northern District of Illinois case number 14-CR-544, the indictment alleged in relevant part that (1) from February 2013 to April 2013, the defendant conspired with Hector Murillo to distribute cocaine (Count One); and (2) in March 2013, the defendant intentionally distributed cocaine with Hector Murillo (Counts Two & Four). Dkt. No. 95-1. The indictment alleged that these offenses took place "at Bellwood, in the Northern District of Illinois, Eastern Division, and elsewhere[.]" On November 18, 2015, the defendant pled guilty to Counts One, Two and Four. Dkt. No. 95-2 at 13.

In Northern District of Illinois case number 15-CR-009, the indictment alleged that in April 2013, the defendant intentionally distributed cocaine in Bellwood, Illinois. Dkt. No. 95-3 at 2. The indictment listed Adan Baca and Armando Garcia as co-defendants. Id. at 1. The defendant pled guilty to this charge on November 18, 2015. Dkt. No. 95-4 at 10.

In Northern District of Illinois case number 15-CR-010, the indictment charged the defendant with three counts of intentionally distributing cocaine (Counts One, Six and Seven). Dkt. No. 95-5. Count One alleged conduct occurring in Park Ridge, Illinois on March 22, 2013; Counts Six and Seven alleged conduct occurring in Bellwood, Illinois on April 25, 2013. Id. at 1, 6-7.

The indictment charged four co-defendants—Roberto Cortez, Michael Aguirre, Eitel Mendoza and Joseph De La Vega. Id. at 1.

The instant indictment ("Wisconsin indictment") charges the defendant with one count of conspiring to distribute methamphetamine and heroin (Count One) and one count of distributing methamphetamine (Count Five). Dkt. No. 1. Count One of the Wisconsin indictment alleges conduct which occurred "[b]eginning on or about January 1, 2012 and continuing until March 18, 2014, in the State and Eastern District of Wisconsin, the Northern District of Illinois, and elsewhere[.]" Dkt. No. 1 at 1. It charges Manuel Soto-Estrada, Roberto Rangel Garcia and Angel Garcia as co-conspirators. Id. Count Five of the Wisconsin indictment alleges conduct that took place on December 12, 2012 "in the Eastern District of Wisconsin, the Northern District of Illinois and elsewhere[.]" Dkt. No. 1 at 6. It charges Soto-Estrada and Rangel Garcia as co-defendants. Id.

      B.    The Parties' Arguments

Before the magistrate judge, the defendant argued that because the offenses charged in the Wisconsin indictment overlapped in time, place and conduct with the offenses charged in the Illinois indictments, the Wisconsin indictment violated the double jeopardy clause of the Fifth Amendment. Dkt. No. 91 at 4. He alleged that the government broke one conspiracy into several, and charged him multiple times for the same scheme. Id. at 5. More specifically, the defendant contended that

> all of [his] alleged acts involving Wisconsin could have been pled or encompassed in [the Northern District of Illinois] prosecution

3

> since there is no evidence that [the defendant] did any further acts involving Wisconsin after April, 2013 and the acts he is accused of all took place in the Northern District of Illinois.

Dkt. No. 91 at 5.

The defendant also argued that he should have been given an opportunity to resolve the charges against him "on a global basis": "[I]t is not due process of law to secure a conviction and a sentence and then inform the person that there are yet more previously filed cases out there to resolve." Dkt. No. 91 at 6.

The government responded that the indictments involved different crimes; the Illinois indictments involved distribution of cocaine while the Wisconsin indictment involved distribution of heroin and methamphetamine. Dkt. No. 95 at 3-4. The government also contended that in the Wisconsin indictment, drug quantity was an element of the offense that the government was required to prove beyond a reasonable doubt. Id. at 4. The government asserted that "the evidence required to support a conviction in Illinois would not have been sufficient to warrant a conviction on the Wisconsin indictment." Id. The government also maintained that there was no evidence that the conspiracy charged in the Wisconsin indictment relied on or involved the same evidence as any of the crimes charged in the Illinois indictments. Id. at 4-5. The government urged the court to conclude that the defendant could not make a *prima facie* case that the Wisconsin indictment violated the defendant's Fifth Amendment double jeopardy rights. Id. at 5.

C.  Judge Jones' Decision

Judge Jones recommended that this court deny the motion without prejudice. Dkt. No. 102 at 6. He began by recounting the constitutional guarantees provided by the Fifth Amendment's double jeopardy clause, and noted that the defendant bore the burden of establishing a *prima facie* case that the prosecutions were for the same offense. Id. at 4. He highlighted the special nature of double jeopardy claims in the context of conspiracies, noting that "'a determination of whether the Government can prosecute on more than one conspiracy rests on whether there exists more than one agreement.'" Id. at 5 (quoting United States v. Dortch, 5 F.3d 1056, 1061 (7th Cir. 1993)).

Judge Jones postulated that "[i]t is possible that Mr. Contreras was continuously involved in only one conspiracy, but it is equally possible that Mr. Contreras was involved in multiple conspiracies during the same time period." Id. at 5. He then looked to the indictments, the evidence, the times, the alleged co-conspirators, the places, the overt acts and whether the two conspiracies depended on each other for success. Id. (citing United States v. Castro, 629 F.2d 456, 461 (7th Cir. 1980)).

Judge Jones found that the defendant conspired with different co-conspirators in the Illinois indictments than in the Wisconsin indictment; that only the Wisconsin indictment involved the Eastern District of Wisconsin; that while there was a slight overlap in time, the Wisconsin indictment covered a longer time span than the Illinois indictments; and that the government asserted that the crux of the evidence in the Wisconsin indictment related to

5

methamphetamine, which was not involved in the Illinois indictments. Id. at 6. For these reasons, Judge Jones determined that the defendant had not met his *prima facie* burden of showing that the government had brought multiple prosecutions for the same acts. Id. He concluded by noting that even though the defendant had failed, at this time, to make his *prima facie* showing, the defendant nevertheless might adduce evidence at trial showing impermissible overlap between the Wisconsin and Illinois prosecutions, such that this court might conclude at that time that the motion has merit. Id. Judge Jones recommended that this court deny the defendant's motion to dismiss the superseding indictment without prejudice. Id.

D. Defendant's Objection and Government's Response

The defendant objected to Magistrate Judge Jones' recommendation, arguing that he had demonstrated a *prima facie* showing of double jeopardy, and therefore that the burden should shift to the government to show that the indictments charged separate conspiracies. Dkt. No. 103 at 2. He reiterated that he had shown that the times and locations overlapped. Id. at 1-2. He argued that Judge Jones misstated the defendant's burden—Judge Jones indicated that the defendant had to show that the "prosecutions are for the same offense in law and in fact," while the defendant asserts that he need only show that double jeopardy exists. Id. at 2. The defendant argues that once he demonstrated that double jeopardy existed, the burden should have shifted to the government, citing United States v. Mallah, 503 F.2d 971 (2d Cir. 1976). Id.

The defendant next argues that Judge Jones' decision implies that if a

6

defendant sells illegal drugs to someone who was also dealing drugs with other people, all of those people would be co-conspirators. Id. at 3. The defendant argues that this can't be true, citing two Second Circuit cases, as well as United States v. Townsend, 924 F.2d 1385, 1392-94 (7th Cir. 1991).

The defendant concluded by arguing that because conspiracy is a continuing offense, "there is no reason to believe, absent compelling evidence, that a defendant has exited one conspiracy and entered another." Id. at 4. The defendant cites to United States v. Kissel, 218 U.S. 601, 607 (1910) and Short v. United States, 91 F.2d 614, 620 (4th Cir. 1937).

The government responded briefly to the defendant's objection by re-asserting that the indictments involve separate offenses. Dkt. No. 107 at 2-3. The government also cited United States v. Thornton, 972 F.2d 764, 766 (7th Cir. 1992) as an example of a case in which a court allowed the government to prosecute multiple marijuana conspiracies because the conspiracies did not sufficiently overlap in time, co-conspirators, overt acts and places. Id. at 3.

E.   Analysis

The Double Jeopardy Clause of the Fifth Amendment provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. CONST. AMEND. V.  The Seventh Circuit has explained that

> [t]hree separate guarantees inhere in this constitutional provision: (1) once acquitted of a charge, a person shall not be prosecuted again for the same offense; (2) once convicted of a crime, a person shall not be prosecuted again for that same crime; and (3) one shall not be punished twice for the same offense.

United States v. Hatchett, 245 F.3d 625, 630 (7th Cir. 2001) (citing Illinois v. Vitale, 447 U.S. 410, 415 (1980)).

The defendant here claims the third guarantee, which protects against multiple punishments for the same offense as well as multiple prosecutions for the same offense. See Blockburger v. United States, 284 U.S. 299, 304 (1932) (multiple punishments); Gavieres v. United States, 220 U.S. 338, 342 (1911) (multiple prosecutions). Courts use the "same elements" test to evaluate whether the Fifth Amendment bar against double jeopardy attaches. Brown v. Ohio, 432 U.S. 161, 168-69 (1977). "The same-elements test, sometimes referred to as the 'Blockburger' test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696 (1993).

The defendant asserts that the Wisconsin indictment prosecutes him for conduct for which he'd already been prosecuted in the Illinois indictments. The "well-established rule" for claims of double jeopardy based on more than one conspiracy prosecution is that "'a defendant bears the burden of establishing that the prosecutions are for the same offense in law and in fact.'" United States v. Dempsey, 806 F.2d 766, 767 (7th Cir. 1986) (quoting Castro, 629 F.2d at 461). In other words, the defendant must make a *prima facie* showing that the prosecutions cover the same conspiracy. Dempsey, 806 F.2d at 768 (citing United States v. Stricklin, 591 F.2d 1112 (5th Cir. 1979)). If the defendant makes such a showing, "the burden shits to the government to

demonstrate that it has not twice prosecuted the defendant for the same conspiracy." Thornton, 972 F.2d at 766 (7th Cir. 1992).

The defendant's burden "is not an easy one because '[b]y the nature of the crime, the precise bounds of a single conspiracy seldom will be clear from the indictment alone. The gist of the crime of conspiracy and the characteristic which defines its breadth is the unlawful agreement.'" Castro, 629 F.2d at 461 (quoting United States v. Marable, 578 F.2d 151, 153 (5th Cir. 1978)). Thus, "a determination of whether the Government can prosecute more than one conspiracy rests on whether there exists more than one agreement.'" Dortch, 5 F.3d at 1061 (7th Cir. 1993) (quoting United States v. Chiattello, 804 F.2d 415, 418 (7th Cir. 1986)).

At the same time, courts must guard against one conspiracy being artificially broken up or "subdivided arbitrarily," resulting in multiple indictments for a single illegal agreement. See Castro, 429 F.2d at 461 (warning that the government could alter which overt acts were charged in an indictment in order to bring multiple prosecutions against one person for the same conspiracy). To determine whether the defendant participated in one conspiracy or several, "'[c]ourts therefore will look to both the indictments and the evidence and consider such facts as whether the conspiracies involve the same time period, alleged co-conspirators and places, overt acts, and whether the two conspiracies depend on each other for success.'" Dempsey, 806 F.2d 766 (quoting Castro, 629 F.2d 456 at 461.

9

Contrary to the defendant's assertions in his objection, Judge Jones was absolutely correct in his statement of the defendant's burden—indeed, Judge Jones used the Seventh Circuit's own language from Dempsey. The defendant must show that the Illinois and Wisconsin prosecutions were for the "same offense in law and in fact." Judge Jones' review of the Illinois and Wisconsin indictments led him to conclude that the defendant had not met this *prima facie* burden. This court agrees. Looking at the factors articulated in Dempsey and Castro, the court agrees that the defendant has failed to demonstrate, at this stage, that the Illinois prosecutions were for the same offenses, in law and in fact, as the Wisconsin prosecution.

The indictments do not cover the same time period. Count One of the Wisconsin indictment charges a conspiracy beginning in January of 2012 and concluding in March of 2014.[1] Dkt. No. 1 at 1. The Illinois indictments charged a conspiracy and acts spanning a subset of that period, alleging that the defendant participated in a conspiracy from February 2013 to April 2013 and distributed drugs in March and April of 2013. See dkt. nos. 95-1, 95-3, 95-5. While the Illinois indictment charged the defendant with committing crimes

---

[1] The defendant makes much of the fact that there is no evidence that he made any deliveries to his Wisconsin co-conspirators after February 2013. Dkt. No. 103 at 1. He argues that because his co-defendant, Soto-Estrada, continued in the Wisconsin conspiracy for another year after the defendant's last proven delivery, it is clear that the defendant was not part of the Wisconsin conspiracy. Id. This amounts to an argument that the defendant had only a buyer-seller relationship with Soto-Estrada. See United States v. Townsend, 924 F.2d 1385, 1394 (7th Cir. 1991) ("evidence of a buyer-seller relationship, standing alone, is insufficient to support a conspiracy conviction"). This is an appropriate argument for the defendant to raise as a defense at trial, but it does not support his double jeopardy claim.

during the same period as the crimes alleged in the Wisconsin indictment, the Illinois indictment charged a conspiracy lasting, at most, three months. In contrast, the Wisconsin indictment charged the defendant with participating in a conspiracy lasting almost twenty-six months. This slight overlap in time does not show that only one conspiracy existed. See United States v. Calabrese, No. 02 CR 1050-2, 2007 WL 1141922, at *2 (N.D. Ill. Apr. 17, 2007) ("The Seventh Circuit has often declined to conclude that a single conspiracy existed even when indictments' dates substantially overlap. See e.g. Dortch, 5 F.3d at 1062; Thornton, 972 F.2d at 967-68; United States v. Dempsey, 806 F.2d 766-67 (7th Cir. 1986); Chiatello, 804 F.2d at 419.")

The indictments do not involve the same co-conspirators. The defendant is the only individual who overlaps the Illinois indictments and the Wisconsin indictment. While the defendant argues that "Michael Aguirre . . . is a co-defendant in the matter before this court," dkt. No. 91 at 3, Michael Aguirre is not named in the Wisconsin indictment.[2] The defendant also asserts that other of his co-defendants in the Wisconsin indictment could have been charged in the Illinois indictments, but that for reasons unknown to him, they were not. This is speculation, and does not help the defendant prove that the prosecutions were the same in law and in fact. Even where multiple individuals overlap across indictments, "minimal overlap among defendants is insufficient to suggest that the conspiracy charged . . . and the conspiracies for which

---

[2] Michael Aguirre and the defendant were charged in Count One of one of the Illinois indictments (case no. 15-CR-010) with distributing 500 grams or more of cocaine.

11

Defendants were previously indicted are one conspiracy." Calabrese, 2007 WL 1141922, at *3 (citing Dortch, 5 F.3d at 1062; Chiatello, 804 F.2d at 418).

The indictments cover different geographical areas. The Wisconsin indictment charges that illegal activities occurred in both Wisconsin and Illinois; the Illinois indictments allege only that illegal activities occurred in Illinois. Even if both indictments involved the same location, the greater Chicagoland area is large enough to encompass more than one conspiracy. See Dortch, 5 F.3d at 1063 (concluding that "[t]he greater St. Louis area is certainly large enough to be home to more than one conspiracy to distribute cocaine."); see also United States v. Calabrese, 2007 WL 1141922, at *3 (referencing Dortch and concluding that "if the greater St. Louis area can accommodate more than one conspiracy to distribute cocaine, then *a fortiori*, the greater Chicago area can accommodate more than one RICO conspiracy.")

The indictments involve different drugs. The Illinois indictments charge the defendant with conspiring to distribute and distributing cocaine. The Wisconsin indictment charges the defendant with conspiring to distribute methamphetamine and heroin, and distributing heroin. This difference, combined with the fact that the Wisconsin indictment names defendants who were not charged in any of the Illinois indictments, supports the conclusion that the prosecutions are not the same in law and in fact.

The defendant points to the fact that F.B.I. Special Agent David Ostrow provided information for the eighty-eight page criminal complaint filed in the Northern District of Illinois, and that discovery for the Wisconsin indictment

12

shows that Agent Ostrow also was a "key participant" in the investigation that resulted in the Wisconsin indictment. Dkt. No. 91 at 2. The fact that one agent investigated a single individual who is charged in multiple cases does not prove that the prosecutions are the same in law and in fact.

The defendant relies on a number of cases from other circuits, particularly the Second and Fourth Circuits, to support his arguments. These cases are not binding on this court; this court must follow Seventh Circuit law. Under that law, the plaintiff has failed to meet his burden. As to the defendant's argument that because conspiracies are continuing enterprises, the government must present evidence that he exited one conspiracy and entered another, the court disagrees. The decisions upon which the defendant relies are fact-bound; the facts here are distinguishable. A person can simultaneously participate in more than one conspiracy, and there is no Seventh Circuit law that requires proof that the defendant exited one conspiracy before finding that he participated in another.

The court agrees with Judge Jones, therefore, that at this point, the defendant has not met his *prima facie* burden of showing that the Illinois and Wisconsin prosecutions are the same in law and in fact. The court also agrees with Judge Jones, however, that it is possible that at trial, the defendant may be able to adduce evidence showing more substantial overlap between the charges in the Wisconsin indictment and charges in the Illinois indictments. See United States v. Calabrese, 490 F.3d 575, 581 (7th Cir. 2007) ("At [the pretrial stage] we cannot know how great the overlap will be, and so we have no

basis for forbidding the trial to go forward. But, 'if it becomes clear from the trial that [the defendant] is being prosecuted twice for the same conspiracy, he is free to raise such arguments after trial if he is convicted on the RICO conspiracy count.") (quoting United States v. Solano, 605 F.2d 1141, 1145 (9th Cir. 1979)). For that reason, the court agrees that it should deny the defendant's motion to dismiss without prejudice.

F.  Conclusion

The court **ADOPTS** Magistrate Judge Jones' report and recommendation, recommending that this court deny the defendant's motion to suppress. Dkt. No. 102. The court **DENIES WITHOUT PREJUDICE** the defendant's motion to dismiss the indictment. Dkt. No. 91.

Dated in Milwaukee, Wisconsin this 4th day of August, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**
